UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FRANK J. LAWRENCE, JR.,

    Plaintiff,

v

ERIC J. PELTON, individually and in his official as President of the Michigan Board of Law Examiners,

    Defendant.

No. 1:17-cv-289

HON. PAUL L. MALONEY

---

Frank J. Lawrence, Jr.
Plaintiff *in pro per*
941 Westview Road
Bloomfield Hills, MI 48304
(248) 722-2560

John G. Fedynsky (P65232)
Assistant Attorney General
Michigan Department of Attorney General
Attorney for Defendant
P.O. Box 30736
Lansing, MI 48909
(517) 373-6434

_____/

## BRIEF IN SUPPORT OF DEFENDANT'S
## MOTION TO DISMISS IN LIEU OF AN ANSWER

# TABLE OF CONTENTS

Page

Table of Contents ........................................................................................................ 2

Concise Statement of Issues Presented ....................................................................... i

Controlling or Most Appropriate Authority ................................................................ i

Statement of Facts ...................................................................................................... 1

Argument .................................................................................................................... 4

I. Federal jurisdiction is not permitted under *Rooker-Feldman* or the Eleventh Amendment ............................................................................. 4

II. The federal court should abstain from deciding claims premised on novel theories of violations of state law. ........................................... 5

III. The complaint fails to state a claim because Pelton did not act unilaterally in any capacity and any amendment would be futile because of applicable immunity doctrines. ......................................... 7

    A. Pelton and the BLE have absolute quasi-judicial immunity .................. 8

    B. Pelton and the BLE have legislative immunity. ..................................... 9

    C. Pelton and the BLE have qualified immunity. ...................................... 9

IV. The challenged policy meets rational basis review and otherwise does not violate any due process rights. ................................................. 11

    A. The three-year period does not violate substantive due process .......... 11

    B. The three-year period does not violate procedural process. ................ 13

Conclusion and Relief Requested ............................................................................ 14

# CONCISE STATEMENT OF ISSUES PRESENTED

1. Should the Court dismiss the complaint for lack of subject matter jurisdiction under *Rooker-Feldman* and Eleventh Amendment immunity doctrines?

2. Should the Court abstain from exercising subject matter jurisdiction over the complaint?

3. Should the complaint be dismissed because Pelton did not act unilaterally and any amendment would be futile because of quasi-judicial, legislative, and qualified immunity?

4. Does the complaint otherwise fail to state any viable due process claim?

# CONTROLLING OR MOST APPROPRIATE AUTHORITY

*Authority*:

*Cope v. Heltsley*, 128 F.3d 452, 458 (1997)

*District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983)

*Dubuc v. Michigan Bd. of Law Examiners*, 342 F.3d 610, 618 (6th Cir. 2003)

*Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)

*Kish v. Michigan State Bd of Law Examiners*, 999 F.Supp. 958, 961-964 (E.D. Mich. 1998)

*Lawrence v. Welch*, 531 F.3d 364, 368 (6th Cir. 2008)

*Malley v. Biggs*, 475 U.S. 335 (1986)

*Ohio Bureau of Employment Servs v. Hodory*, 431 U.S. 471, 477 (1977)

*Range v. Douglas*, 763 F.3d 573, 588 (6th Cir. 2014)

*Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923)

*Wilkerson v. Johnson*, 699 F.2d 325 (6th Cir. 1983)

*Wilson v. Layne*, 526 U.S. 603, 615 (1999)

*Zinermon v. Burch*, 494 U.S. 113, 115 (1990)

Mich. Comp. Laws § 600.904

Mich. Comp. Laws § 600.934

STATEMENT OF FACTS

**Lawrence's "general challenge" to the three-year period for expiration of passing Bar Examination scores.**

Plaintiff Frank J. Lawrence styles his lawsuit a "general challenge to the 'policy' of the Michigan Board of Law Examiners that passing Bar Examination scores are only valid for three years." (Compl. at pg. 1.)  Lawrence contends that, apart from violating state law, this policy violates the U.S. Constitution.  (*Id.* at 2.) Lawrence has named only one defendant – Eric J. Pelton, President of the Board of Law Examiners (BLE).  (*Id.* at ¶ 4.)  Pelton is sued individually and in his individual capacity for declaratory and injunctive relief.[1]

**Lawrence's history of unsuccessful bar applications and litigation.**

Lawrence passed the July 2001 Michigan Bar Examination.  (Compl. at ¶¶ 3, 11.)  Lawrence passed on the strength of his multistate score alone – i.e., multi-stating the exam.  (Compl. at ¶ 20.)  In February 2009, the BLE eliminated the multi-stating option and required grading of every applicant's essay portion of the examination using a combined score to determine if an applicant passed.  (*Id.*)  Due to issues involving character and fitness, his first three bar applications were

---

[1] In an abundance of caution, Pelton asserts that any claim in federal court for damages against him in his official capacity as a state officer is barred by the Eleventh Amendment.  *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989); *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013) (collecting cases).

rejected, which Lawrence has unsuccessfully litigated in several cases in state and federal court. (*Id.* at ¶ 29.)[2]

For his fourth bar application, the BLE, on December 8, 2016, adopted the State Bar of Michigan's favorable character and fitness recommendation for Lawrence. (Compl. at ¶¶ 3, 12.) The BLE notified Lawrence that to obtain a law license he must retake and pass the Michigan Bar Examination. (*Id.* at ¶ 13.)

**Lawrence claims that the BLE's alleged violation of Michigan law amounts to denial of federal due process rights.**

Lawrence contends that the BLE has violated Michigan law by applying a policy that invalidates passing bar exam scores after three years. (Compl. at ¶ 14.) The BLE had granted a waiver of this policy for Lawrence's third bar application. The BLE denied his request for another waiver for the fourth application. (*Id.* at ¶ 15.) Lawrence contends that this denial, along with several alleged practices that are not relevant to the instant motion, "have been established to thin the herd of attorneys in the State of Michigan who could compete with the BLE's members and those attorneys who are already established within the legal profession." (*Id.* at ¶ 24.)

---

[2] *See Lawrence v. Chabot, et al* (W.D. Mich. 03-cv-020) (closed 11/30/04, aff'd 182 *Lawrence v. Chabot*, Fed App'x 442 (6th Cir. 2006)); *Lawrence v. Berry, et al* (W.D. Mich. 06-cv-134) (closed 12/14/06, aff'd *Lawrence v. Welch*, 531 F.3d 364 (6th Cir. 2008)); *Lawrence v. Chabot, et al* (W.D. Mich. 08-cv-503) (closed 6/19/08); *Lawrence v. Parker, et al* (W.D. Mich. 09-cv-095) (closed 2/17/09, motion to reopen denied 3/24/17, appeal pending in Sixth Cir. No. 17-1319); *Lawrence v. Raubinger, et al* (W.D. Mich. 10-cv-467) (motion to amend pending); *Lawrence v. Board of Law Examiners*, Mich. Sup. Ct. No. 144191 (third bar application, filed 12/27/11, denied 4/23/12).

Lawrence alleges one cause of action for "Violation of Plaintiff's Civil Rights – Fourteenth Amendment Under Section 1983." (Compl. at pg. 8.) He alleges that Pelton's enforcement of the BLE's three-year policy "contravenes the due process clause." (*Id.* at ¶ 28.) Lawrence contends that Pelton's enforcement of the policy is "not just arbitrary, irrational and capricious – it is an unlawful misapplication of state licensing law, which sets this case apart from those situations where plaintiffs challenged arbitrary conduct committed by state officials pursuant to presumptively valid statutes or Rules." (*Id.* at ¶ 31.)

It appears that Lawrence primarily alleges violation of his substantive due process rights, as he refers to "impermissible substantive restrictions on individual liberty," (Compl. at ¶ 33), "Pelton's arbitrary conduct," (*id.*), no rational basis for the policy, (*id.* at ¶ 34), and a due process rights violation that "is shocking to the conscience," (*id.* at ¶ 36). Additionally, Lawrence pivots and alleges "[a]lternatively" that procedural due process is denied to applicants "by virtue of lack of adequate procedures that would provide them a pre-deprivation hearing." (*Id.* at ¶ 37.)

**Only equitable relief is sought.**

For his claim for relief, Lawrence does not request money damages. (Compl. at pg. 12.) He asks instead for (1) "declaratory judgment that Defendant Pelton has engaged in an ongoing violation of federal law and that his enforcement of a Rule (what he refers to as a 'policy') that extinguishes passing Bar Exam scores after three years . . . equates to a violation of due process of law" and (2) an order that will "enjoin Defendant Pelton from enforcing his three-year expiration 'policy.'" (*Id.*)

3

# ARGUMENT

## I. Federal jurisdiction is not permitted under *Rooker-Feldman* or the Eleventh Amendment

Federal courts do not have subject matter jurisdiction over cases that amount to direct appeals of outcomes in state tribunals. *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462 (1983). Artful pleading alleging constitutional violations is inadequate as a matter of law if the source of injury falls within *Rooker-Feldman* doctrine. *Lawrence v. Welch*, 531 F.3d 364, 368 (6th Cir. 2008) ("the pertinent inquiry . . . is whether the 'source of the injury' . . . is the state court judgment."). With respect to Lawrence, the Sixth Circuit has previously held that his constitutional challenge to denial of his bar application "is a direct attack on a state court judgment and thus barred by *Rooker-Feldman.*" *Id.* at 369. "[T]his circuit has held that similar federal challenges to the denial of bar applications are barred by *Rooker–Feldman.*" *Id.* (citing *Raymond v. Moyer*, 501 F.3d 548, 554 (6th Cir. 2007); *Dubuc v. Michigan Bd. of Law Examiners*, 342 F.3d 610, 618 (6th Cir. 2003)).

Straightforward application of this law means the Court lacks jurisdiction. Lawrence is challenging how the BLE decided his fourth bar application. That is the source of his injury. The propriety of how the BLE applied the expiration policy to his passing bar examination score is simply not a matter within the subject matter jurisdiction of a federal district court. "Lawrence's second claim challenges only defendants' application of their admission criteria to him . . . . his second claim

4

is likewise barred by the *Rooker-Feldman* doctrine." *Lawrence v. Welch*, 531 F.3d at 372.

Additionally, under the Eleventh Amendment Michigan has a special sovereignty interest in having disputes about bar applications resolved in its own courts – not just damages claims, but also claims for prospective injunctive relief. *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261 (1997); *see also Kish v. Michigan State Bd of Law Examiners*, 999 F.Supp. 958, 961-964 (E.D. Mich. 1998) (analyzing and applying *Coeur d'Alene*). This sovereign interest is codified under Michigan law, which provides the Michigan Supreme Court with superintending control over the BLE. MCL 600.904. Accordingly, Lawrence's most recent challenge to the BLE simply does not belong in federal court. Therefore, the Court should dismiss the complaint without prejudice for lack of jurisdiction.

## II.    The federal court should abstain from deciding claims premised on novel theories of violations of state law.

Lawrence appears to premise his constitutional claims on how the BLE has proceeded under Michigan law. (Compl. at ¶¶ 5-10, 14-15, 26-27, 31, 34-36.) Lawrence contends that "the BLE has no legal authority to invalidate passing Bar Exam scores after three years because it never secured permission from the Michigan Supreme Court to do so." (Compl. at ¶ 14.) "Its conduct complained of herein is an unlawful misapplication of state licensing law and it is arbitrary." (*Id.*) Elsewhere, Lawrence asserts "[t]here can never be a rational basis for the

5

enforcement of a blatantly invalid licensing Rule – regardless of any good reason Defendant Pelton may present to this Court for doing so." (*Id.* at ¶ 34.)

This species of argument invites a federal court to sit in judgment of what delegation of authority to the BLE is or is not permitted under Michigan law. For reasons of comity and judicial economy, principles of settled abstention law advise that a federal district court should avoid that thicket. According to the U.S. Supreme Court:

> There are, of course, two primary types of federal abstention. The first, usually referred to as Pullman abstention, involves an inquiry focused on the possibility that the state courts may interpret a challenged state statute so as to eliminate or at least to alter materially, the constitutional question presented. *Railroad Comm'n v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). *See Bellotti v. Baird*, 428 U.S. 132, 96 S.Ct. 2857, 49 L.Ed.2d 844 (1976). The second type is Younger abstention, in which the court is primarily concerned, in an equitable setting, with considerations of comity and federalism, both as they relate to the State's interest in pursuing an ongoing state proceeding, and as they involve the ability of the state courts to consider federal constitutional claims in that context. *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). *See Huffman v. Pursue, Ltd.*, 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975); *Judice v. Vail*, 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977); *Trainor v. Hernandez*, 431 U.S. 434, at 448, 97 S.Ct. 1911, at 1920, 52 L.Ed.2d 486 (concurring opinion).
> *Ohio Bureau of Employment Servs v. Hodory*, 431 U.S. 471, 477 (1977).

Here, Lawrence asks a federal court to make fine distinctions under Michigan law about what policies the BLE may or may not adopt with or without the permission of the Michigan Supreme Court. This is a novel issue of state law that has not been extensively litigated in the Michigan courts. *See Kish*, 999 F.Supp. 958 (E.D. Mich. 1998) (*Younger* abstention is appropriate for an equal protection challenge to the BLE's application of a residency requirement). A federal court should not weigh in

on the matter and predicate a federal civil rights violation upon this type of alleged misapplication of Michigan law.[3] Accordingly, even if this Court has jurisdiction, it should decline to exercise it, consistent with the important principles underlying longstanding abstention doctrine.

### III. The complaint fails to state a claim because Pelton did not act unilaterally in any capacity and any amendment would be futile because of applicable immunity doctrines.

Lawrence has sued Pelton, the President of the BLE, but in actuality the gravamen of the complaint is against the conduct of the BLE itself. *See, e.g.*, Compl. at ¶ 14 ("Its [the BLE's] conduct complained of herein . . . .") There is no allegation in the complaint that Pelton undertook any act in his individual capacity. For any official capacity claim, there is no allegation that he did or even could act unilaterally in the context of formulating and enforcing a three-year expiration policy for passing bar exam scores. Accordingly, Lawrence has simply brought the wrong party before the Court.

Additionally, any attempt to amend the complaint to sue the BLE itself would be futile because the Court lacks jurisdiction and because applicable doctrines of immunity would bar this suit.

---

[3] Defendant of course disputes Lawrence's contention that anything improper happened under Michigan law with respect to how the three-year policy was applied here. By statute, the BLE has a wide grant of authority to judge the qualifications of a bar applicant. MCL 600.934. This authority includes broad discretion to judge whether a person "proves to the satisfaction of the board of law examiners that he or she . . . has the required general education, learning in the law, and fitness and ability to enable him or her to practice law in the court of record of this state . . . ." MCL 600.934(1).

### A.     Pelton and the BLE have absolute quasi-judicial immunity.

"[D]etermining a particular individual's qualifications and fitness for admission to practice law is inherently a judicial act" that is entitled to absolute immunity. *Lawrence v. Welch*, 531 F.3d at 373 (citing *Sparks v. Character and Fitness Comm. of Ky.*, 859 F.2d 428, 434 (6th Cir. 1988)); *see contra Dubuc,* 342 F.3d at 619 n. 4 (no absolute immunity for enforcement of allegedly unconstitutional waiting period for reapplication).[4]

In this case, the BLE was not simply enforcing a rule like in the *Dubuc* case. It decided in its discretion how to judge the learning in the law of an applicant on his fourth application, who during the pendency of his third application had a waiver of the three-year period.  Additionally, this particular applicant passed the bar examination over fifteen years ago in 2001, at a time when the manner of scoring fell under the pre-2009 multi-stating out standard.  Under the circumstances as alleged, Lawrence is challenging a quasi-judicial decision of the BLE that he does not meet the requirements of admission.  Absolute immunity would therefore stand in the way of any attempt to correct the complaint to name the right defendant.

---

[4] In *Dubuc*, the plaintiff claimed that the applicable rules punished him because he was subject to a longer waiting period to reapply because he demanded a de novo hearing before the BLE. *Dubuc*, 342 F.3d at 613-614.  Lawrence's challenge is distinguishable for at least two reasons.  First, he is challenging more than just a general rule or policy, but a specific quasi-judicial determination of whether his application met the educational requirements.  Second, he is not alleging, based upon him demanding a hearing, that a different period of validity applied to his passing bar examination score.

### B. Pelton and the BLE have legislative immunity.

"The Michigan Supreme Court's promulgation of rules . . . is a legislative activity" entitled to absolute immunity. *Abick v. Michigan*, 803 F.2d 874, 878 (6th Cir. 1986). In like measure, the BLE's ability to make and enforce its rules and policies under Michigan law falls under the same protections of legislative immunity. To the extent that resolving this complaint amounts to second-guessing the rule and policy making function of the BLE, legislative immunity forecloses any such inquiry. Accordingly, any amendment to the complaint to sue the BLE itself would be futile.

### C. Pelton and the BLE have qualified immunity.

The complaint fails to allege violation of any recognized clearly established constitutional right. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Biggs*, 475 U.S. 335 (1986). At best, Lawrence presents a constitutional challenge premised upon a novel theory about what kind of rule or policy making authority under Michigan law was properly delegated to the BLE under the auspices of the Michigan Supreme Court.

The Sixth Circuit has observed that qualified immunity doctrine "requires the courts to examine the asserted right at a relatively high level of specificity." *Cope v. Heltsley*, 128 F.3d 452, 458 (1997). "The right must have been 'clearly established' not just in an abstract sense, but in a 'particularized' sense." *Cope*, 128 F.3d at 458 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). "Claims of

9

immunity are thus to be analyzed 'on a fact-specific, case-by-case basis to determine whether a reasonable official in the defendant['s] position could have believed that his conduct was lawful." *Cope*, 128 F.3d at 458 (quoting *Pray v. City of Sandusky*, 49 F.3d 1154, 1158 (6th Cir. 1995)). Accordingly, defendants' qualified immunity claims are analyzed "to determine whether a reasonable official in the defendant['s] position could have believed that his conduct was lawful." "[T]he burden of convincing the court that the law was clearly established under this particularized 'could have believed' test is a burden that rests squarely on the plaintiff." Moreover, "[f]or qualified immunity to be surrendered, pre-existing law must dictate, that is truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what defendant is doing violates federal law in the circumstances." *Cope*, 128 F.3d at 459 (internal quotes and citations omitted). The unlawfulness of the alleged conduct must be apparent in the light of pre-existing law. *Wilson v. Layne*, 526 U.S. 603, 615 (1999).

The type of due process claim asserted here – be it substantive or procedural – was simply not clearly established in the way that Lawrence's complaint presents it. According to him, a period of expiration that might admittedly be rational cannot be considered rational if it was adopted in a manner that was ultra vires or otherwise inappropriate. This theory finds no anchor in any clearly established law. There is simply no basis to conclude that a reasonable official in Pelton or the BLE's position would have been compelled to conclude that applying a three-year policy to Lawrence's fifteen-year-old score would violate clearly established federal law to the

10

contrary. (Compl. at ¶ 34.) As alleged, the complaint simply fails to state a claim under applicable qualified immunity doctrine.[5]

### IV. The challenged policy meets rational basis review and otherwise does not violate any due process rights.

#### A. The three-year period does not violate substantive due process.

What happened in this case falls far short of anything that would shock the conscience. *Range v. Douglas*, 763 F.3d 573, 588 (6th Cir. 2014). Lawrence made his fourth bar application and his character and fitness were approved. But another request to grant a waiver for the old passing bar exam score was denied. That score is over fifteen years old and from a time when multi-stating out was sufficient. This is not the sort of threat to the concepts of ordered liberty and fundamental rights that is protected by the doctrine of substantive due process. *Prater v. City of Burnside*, 289 F.3d 417, 431 (6th Cir. 2002). Lawrence's claim does not fall within the "narrow class of interests, including those enumerated in the Constitution, those so rooted in the traditions of the people as to be ranked fundamental, and the interest in freedom from government actions that 'shock the conscience.'" *Range*, 763 F.3d at 588 (quoting *Bell v. Ohio State Univ.*, 351 F.3d 240, 249–50 (6th Cir. 2003)).

This conclusion is apparent within the four corners of the complaint. Lawrence concedes, as he must, that some time limit can be reasonable and

---

[5] Additionally, for the reasons stated below, the allegations fail in any event to state any due process violation, and certainly not one that is clearly established.

11

permitted under the law.  He cites Florida and its five-year period of limitation.  (Compl. at ¶ 30.)  It hardly shocks the conscience that Michigan would have a three-year period or that any jurisdiction would have qualms about accepting a passing score from over fifteen years ago.

Similarly, the complaint offers no recognized basis for concluding that impertinent allegations about "the BLE's economic agenda to discourage competition with its members" somehow amounts to a due process violation.  (Compl. at pg. 5.)[6]  Lawrence cites *Wilkerson v. Johnson*, 699 F.2d 325 (6th Cir. 1983), which is readily distinguishable.  That case involved a member of the Tennessee Board of Barber Examiners who acted in concert with others on the regulatory board to intentionally misapply state licensing law to keep a neighboring competitor from obtaining an occupational license.  *Id.*  There are no similar facts here, only an alleged disagreement about the wisdom of a policy and how under state law it was implemented.  In other words, the allegations identify no particular axe to grind for Pelton or the BLE that, if true, would somehow violate Lawrence's substantive due process rights.  The substantive due process claim should be dismissed with prejudice for failure to state a valid cause of action.

---

[6] Consider the old adage that one lawyer moving to a new town will starve whereas two lawyers in the same town will flourish.  The complaint offers no basis to conclude one way or another how many new attorneys in Michigan, a state of about ten million people, would advantage or disadvantage the BLE or any of its individual members in any appreciable way.

12

### B.     The three-year period does not violate procedural process.

If the litany of litigation connected to Lawrence proves anything, it proves that as a bar applicant he has ample procedural remedies at his disposal. His procedural due process claim in this case is presented in the alternative and as an afterthought. (Compl. at ¶ 37.) To state such a claim, Lawrence must show not only that he was improperly deprived of a constitutionally protected interest, but that the state failed to give him an adequate post-deprivation remedy. *See, e.g., Zinermon v. Burch*, 494 U.S. 113, 115 (1990).

There is no recognized property interest in a passing bar examination score that will remain valid in perpetuity. The complaint concedes that Lawrence was "notified" of the requirement that he re-take the bar exam. (Compl. at ¶ 13.) This is consistent with all the process due to any bar applicant – notice of the requirements that are to be met, and an appropriate playing field for satisfying them, or not. Lawrence got his fair shake and it is up to him to meet the same requirements any other similarly situated applicant would have to meet. Lawrence thus fails to state a valid procedural due process claim, particularly in a licensing context where state law provides for its highest court to exercise superintending control over the licensing agency. Constitutionalizing disputes like this one is not a proper function of federal courts. The Court should therefore dismiss the procedural due process claim with prejudice.

## CONCLUSION AND RELIEF REQUESTED

Defendant respectfully requests that the Court grant this motion, dismiss the complaint without prejudice for lack of jurisdiction, and grant any other appropriate relief.  Abstention would also be appropriate.  In the alternative, the complaint should be dismissed with prejudice under applicable immunity doctrines and for failure to otherwise state a claim.

Respectfully submitted,

BILL SCHUETTE
Attorney General

*s/John Fedynsky*
John Fedynsky (P65232)
Assistant Attorney General
Attorney for Defendant
P. O. Box 30736
Lansing, Michigan  48909
517.373.6434
Email:  fedynskyj@michigan.gov
(P65232)

Dated:  May 22, 2017

## CERTIFICATE OF SERVICE

I hereby certify that on May 22, 2017, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing of the foregoing document as well as via US Mail to all non-ECF participants.

Frank J. Lawrence, Jr.
941 Westview Road
Bloomfield Hills, MI 48304

*s/John Fedynsky*
John Fedynsky (P65232)
Assistant Attorney General

14